UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NEW HAMPSHIRE**<br><br>**Plaintiff,**<br><br>v.<br><br>**UNITED STATES CUSTOMS AND BORDER PROTECTION**<br><br>**Defendant.** | Case No.: |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552 et seq.**

The American Civil Liberties Union Foundation of New Hampshire ("Plaintiff" or "ACLU-NH") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, as amended, to obtain injunctive and other appropriate relief requiring the United States Customs and Border Protection ("CBP" or "Defendant") to release records about the Swanton Sector of CBP apprehensions and encounters in New Hampshire from October 2022 to January 2023 (hereinafter "the Request"). Exhibit A.

## INTRODUCTION

The Swanton Sector of CBP covers (i) the entire State of Vermont, (ii) Clinton, Essex, Franklin, St. Lawrence and Herkimer counties in New York, and (iii) Coos, Grafton, and Carroll counties in New Hampshire.

For the period from October 1, 2022 to December 31, 2022, the Request seeks records sufficient to identify (1) how many of the apprehensions occurred in New Hampshire—including

1

in the New Hampshire counties of the Swanton Sector (Coos, Grafton, and Carroll Counties)—relative to the total number of apprehensions by the sector, (2) the municipality where the apprehensions occurred, and (3) the nationality of individuals apprehended.  Exhibit A.  For the period of January 2023, the Request seeks records sufficient to identify (1) how many of the 367 January 2023 apprehensions occurred in New Hampshire, (2) the municipality where the apprehensions occurred, and (3) the nationality of the individuals apprehended.  Exhibit A.

On January 25, 2023, CBP publicly stated that apprehensions in the CBP's Swanton sector have increased from October 2022 to January 2023 compared to the same period in the prior year.  However, these statistics are not specific to New Hampshire, but rather cover the entire Swanton sector.  Notwithstanding this data's lack of a specific nexus to the New Hampshire/Canada border, the New Hampshire Department of Safety and the Governor of New Hampshire have used CBP's public statements to advocate for a $1,435,384 budgetary proposal for the fiscal year ending June 30, 2023 that would create and fund a Northern Border Alliance Program.

However, to date, no concrete evidence indicates that apprehensions have significantly increased at the New Hampshire/Canada border.  In light of State officials' use of CBP's data to promote the purported need for the Northern Border Alliance Program, the ACLU-NH submitted public records requests to both the Department of Safety and the Office of the Governor seeking information on New Hampshire apprehensions by CBP.  The responses from these state actors confirm what was suspected: that these state officials have no records in their possession concerning CBP apprehensions at the New Hampshire/Canada border that would remotely justify this nearly $1,500,000 appropriation.  In recognition of this reality, the New Hampshire House of Representatives stripped this Program out of the budget.  However, the Senate Finance Committee recently voted to restore this funding to the budget in a proposal that will soon be voted on by the

Senate.

The production of this information is in the public interest. This FOIA request seeks information in possession of CBP that is similar to the information the ACLU-NH previously requested from state officials (but that these state officials did not have). This information will help the public continue to evaluate the propriety of this proposed nearly $1,500,000 appropriation for a "Northern Border Alliance Program." And CBP is the only entity that possesses accurate data concerning the nature of apprehensions at the border.

But in the face of these obvious public interests, CBP categorically rejected the ACLU-NH's request because "CBP does not release enforcement statistics and/or enforcement data at less than a Sector or Field Officer level." Exhibit B. This is not a lawful or valid excuse for CBP to withhold the information. CBP can only withhold the requested information by specifically citing statutory exemptions Congress provided. *See Carpenter v. United States DOJ*, 470 F.3d 434, 438 (1st Cir. 2006) ("[t]he government bears the burden of proving that withheld materials fall within one of the statutory exemptions"). No valid exemption has been cited here. While CBP references Exemption 6, that exemption covers information that would constitute a clearly unwarranted invasion of the personal privacy of the individuals involved. CBP fails to explain how Exemption 6 has anything to do with the Swanton Sector's statistics of how many alleged noncitizens were apprehended in New Hampshire. Exhibit B. Here, the ACLU-NH is only seeking data, not identifying information. CBP's position is further undermined by the fact that it may have already released to WMUR the fact that no crossing was "recorded in New Hampshire" between October 2022 and January 2023, while "[t]here were 94 people from 11 different countries taken into custody across Vermont and New York." If CBP has already released apprehension data disaggregated by state, then there is no basis for withholding the New Hampshire apprehension

data sought here.

For these reasons, CBP unlawfully withholds the requested information without any justification under the FOIA statute. The ACLU-NH further alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties under 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. §§ 701-706, and 28 U.S.C. § 1331.

2. The venue is proper in the District of New Hampshire under 5 U.S.C. § 552(a)(4)(B) because ACLU-NH's principal place of business is the District of New Hampshire and because a substantial portion of the requested records related to immigration enforcement and communications occurs in the District of New Hampshire. For the same reasons, the venue is also proper under 28 U.S.C. § 1391(e).

## PARTIES

3. Plaintiff American Civil Liberties Union Foundation of New Hampshire ("ACLU-NH") is a non-profit 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charged to individuals and organizations in civil rights and civil liberties cases and educates that public about civil rights and civil liberty issues across New Hampshire. ACLU-NH is headquartered in Concord, New Hampshire.

4. Defendant U.S. Customs and Border Protection ("CBP") is a federal agency within the meaning of 5 U.S.C. § 552(f)(1).

## FACTS

### Public Concern with CBP's New Hampshire Border Crossing Data

5. The Request arises from CBP's recent claim that the number of apprehensions and encounters concerning the Canadian/New Hampshire border crossings has significantly increased.

Exhibits A-C.

6. On January 25, 2023, CBP issued a press release stating that "[b]etween October 1, 2022, and December 31, 2022, [CBP's] Swanton Sector recorded an approximate 743% increase in apprehensions and encounters compared to the same period of the year prior." Exhibit D. On February 13, 2023, CBP also publicly announced that the "Swanton Sector recorded 367 apprehensions and encounters during January of fiscal year 2023" and "January's total surpassed the preceding January apprehensions for the past 12 years combined (Total: 344)." Exhibit E.

7. However, these statistics are not specific to New Hampshire. Instead, they cover the entire Swanton Sector: (i) the entire State of Vermont, (ii) Clinton, Essex, Franklin, St. Lawrence and Herkimer counties in New York, and (iii) Coos, Grafton, and Carroll counties in New Hampshire.[1] And the New Hampshire/Canadian border only constitutes about 58 of the 295 miles of Canadian border in the Swanton Sector. Further, these statistics referenced by CBP do not seem to be limited to cross-border apprehensions but rather seem to cover apprehensions in the entire sector and potentially deep into the interior of New England. This would include, if they in fact occurred, apprehensions deep in the interior of New Hampshire in Grafton and Caroll Counties—far from the border.

8. Notwithstanding this ambiguity, the Commissioner of the New Hampshire Department of Safety Robert Quinn recently testified before the U.S. House of Representatives Committee on Homeland Security Subcommittee on Oversight, Investigations, and Accountability on March 28, 2023 that "New Hampshire has seen an increase in crossings." Exhibit F. As reported in the *Boston Globe*, Commissioner Quinn also appeared on Fox News on March 27, 2023 and told viewers the state had seen a "slight increase" in illegal crossings. Exhibit G.

---

[1] https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/swanton-sector-vermont

9. Commissioner Quinn's statements are related to New Hampshire Governor Christopher Sununu's earlier letter to Secretary of Homeland Security Alejandro Mayorkas, which also noted "the recent rise in [CBP] agents encountering and apprehending individuals illegally crossing the international border in this [Swanton] Sector." Exhibit H.

10. These state officials have also used CBP's public statements to advocate for a $1,435,384 budgetary proposal for the fiscal year ending June 30, 2023 that would create and fund a Northern Border Alliance Program. Under this proposed Program, the Department of Safety would "make grants available to other state, county, and local law enforcement agencies, and also provide funding for the division of state police to reduce the instance of crimes and illicit activity in close proximity to the Canadian border." Exhibit I.

11. After Commissioner Quinn's public statements, the *Boston Globe* inquired about the data supporting Commissioner's statement that there has seen a "slight increase" in illegal crossings. Exhibit G. The spokesperson for the Department of Safety indicated to the *Boston Globe* that a CBP supervisor provided this information—presumably orally[2]—to the New Hampshire Information and Analysis Center, indicating there has been a slight increase in the number of illegal crossings into the United States from Canada along New Hampshire's border. This was the sole basis of Commissioner Quinn's "slight increase" statement. Exhibit F. Further, according to WMUR, no crossing was "recorded in New Hampshire" between October 2022 and January 2023. Exhibit J. The WMUR article also indicated that "[t]here were 94 people from 11 different countries taken into custody across Vermont and New York." *Id*. Presumably, CBP provided this data to WMUR.

---

[2] The ACLU-NH asked the Department of Safety for documentation supporting this "slight increase" comment. The Department stated on April 10, 2023 that "Commissioner Quinn's 'slight increase' comment was not based on any written/electronic document and was the product of only verbal communication from CBP."

12.     To have access to the exact number of border crossings between Canada and New Hampshire, the ACLU-NH submitted a right-to-know request under RSA 91-A to the New Hampshire Department of Safety and under the New Hampshire Constitution to the New Hampshire Governor's Office on March 16, 2023.  Exhibit K; Exhibit L.

13.     On March 23, 2023, the New Hampshire Governor's Office indicated that the office was "not in possession of any governmental records that would be responsive to [the ACLU-NH's] request."  Exhibit M.

14.     On March 22, 2023, the New Hampshire Department of Safety responded that "the State Police was unable to locate any records responsive to [ACLU-NH's] requests pertaining to CBP apprehensions in the Swanton Sector during the months of October through December 2022." Exhibit N.

15.     On April 10, 2023, the New Hampshire Department of Safety further shared to the *Boston Globe* that "Commission Quinn's statement [concerning the slight increase in the New Hampshire border crossing] was based solely upon information from a supervisor of the United States Border Patrol in the Swanton Sector, provided to the New Hampshire Information and Analysis Center . . . ."  Exhibit O.

16.     The Department suggested that the *Globe* would "have to contact U.S. Border Patrol through their CBP spokesperson for an explanation, and to clarify any of [ACLU-NH's] questions on statistics . . . ."  Exhibit O.

## Plaintiff's FOIA Request

17.     On April 5, 2023, ACLU-NH submitted the Request to CBP.  Exhibit A.

18.     The Request sought the following data:

- October 1, 2022 to December 31, 2022

- o  Records sufficient to identify how many of the apprehensions from October 1, 2022 to December 31, 2022 occurred in New Hampshire—including in the New Hampshire counties of the Swanton sector (Coos, Grafton, and Carroll Counties)—relative to the total number of apprehensions by the sector during that three-month time period.

- o  Records sufficient to identify (1) how many of the 367 January 2023 apprehensions occurred in New Hampshire, (2) the municipality where the apprehensions occurred, and (3) the nationality of the individuals apprehended.

- January 2023

    - o  Records sufficient to identify how many of the 367 January 2023 apprehensions occurred in New Hampshire, including in the New Hampshire counties of the Swanton sector (Coos, Grafton, and Carroll Counties).

    - o  Of these January 2023 apprehensions in New Hampshire identified in Request No. 3, records sufficient to identify (i) the municipality where the apprehension occurred, and (ii) the nationality of the person apprehended.

**Agency's Response**

19.  On April 18, 2023, CBP categorically denied the Request.  <u>Exhibit B</u>.

20.  CBP explained that "CBP does not release enforcement statistics and/or enforcement data at less than a Sector of Field Office level."  *Id*.

21.  However, CBP failed to cite any statutory exemption for this position.  *Id*.

22.  CBP also noted that CBP "may have applied FOIR Exemption 6 to protect PII of DHS employees, including names and contact information."  *Id*.

23.  However, CBP failed to explain how Exemption 6 is pertinent to the Request.  The

Request did not seek any names or contact information.  *Cf.* Exhibit A.

### Plaintiff's Administrative Appeal

24. On April 18, 2023, ACLU-NH administratively appealed CBP's categorical denial. Exhibit C.

25. ACLU-NH raised two arguments. First, CBP failed to carry the burden of establishing the applicability of proper exemptions. *See Stalcup v. CIA*, 768 F.3d 65, 70 (1st Cir. 2014) ("[t]he government carries the burden of establishing the applicability of the exemption"). Second, CBP failed to release any data that was not covered by Exemption 6. Nor did CBP explain how the Request is subject to Exemption 6, especially where CBP has released similar data publicly for its own benefit (as reflected in the press release cited in the original request, and as possibly reflected in the WMUR story).

26. CBP has acknowledged ACLU-NH's administrative appeal. However, CBP has not adjudicated the appeal yet. 5 U.S.C. § 552(a)(6)(A)(i). Exhibit C.

27. ACLU-NH is deemed to have exhausted its administrative remedies with respect to the administrative appeal under 5 U.S.C. § 552(a)(6)(C), because CBP failed to provide its determination on the appeal within the 20-business-day time limit required by statute under 5 U.S.C. § 552(a)(6)(A)(i). *See Citizens for Resp. & Ethics in Wash. V. FEC*, 711 F.3d 180, 189-90 (D.C. Cir. 2013) ("if the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court").

### CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF FOIA FOR ERRONEOUSLY WITHHOLDING THE REQUESTED INFORMATION WITHOUT LAWFUL JUSTIFICATION

28. All prior paragraphs are incorporated.

29. CBP's determination to withhold the requested information violates FOIA, 5 U.S.C. § 552.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Assume jurisdiction over this matter;

B. Declare that Defendant's withholding of the requested information violates FOIA;

C. Issue an injunction ordering Defendant to immediately disclose the requested information and to make copies immediately available to Plaintiff without charge for any search or duplication fees;

D. Award reasonable costs and attorney's fees incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

E. Grant such further relief as the Court deems just and proper.

Respectfully submitted,

By and through his attorneys affiliated with the American Civil Liberties Union Foundation of New Hampshire,

*/s/ SangYeob Kim*
Gilles R. Bissonnette (N.H. Bar. No. 265393)
SangYeob Kim (N.H. Bar No. 266657)
Henry R. Klementowicz (N.H. Bar No. 21177)
AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE
18 Low Avenue
Concord, NH  03301
Tel.:  603.333.2081
gilles@aclu-nh.org
sangyeob@aclu-nh.org
henry@aclu-nh.org

Date:  May 22, 2023