UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NEW HAMPSHIRE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION,<br><br>Defendant. | Case No. 1:23-cv-00282-JL |

MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.    INTRODUCTION.

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of United States Customs and Border Protection ("CBP") records regarding U.S. Border Patrol, CBP apprehensions in New Hampshire from October 1, 2022, to January 31, 2023. Document Number ("DN") 6. CBP denied Plaintiff's FOIA request because Exemptions (b)(6), (b)(7)(C), (b)(7)(E), and (b)(7)(F) exempted the responsive information from disclosure. *See* 5 U.S.C. §§ 552(b)(6), 552(b)(7)(C), 552(b)(7)(E), and 552(b)(7)(F). This Court reviews that agency action de novo. 5 U.S.C. § 552(a)(4)(B).

Because there are no genuine issues of material fact and the facts establish that CBP is entitled to judgment as a matter of law, this Court should enter summary judgment for Defendant.

II.    STANDARD OF REVIEW.

A court should grant summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment

as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. *Carmona v. Toledo*, 215 F.3d 124, 132 (1st Cir. 2000); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

"Summary judgment is warranted for a defendant in a FOIA case when the agency proves that it has fully discharged its obligations under the FOIA after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *American Civil Liberties Union of Mass., Inc. v. Central Intelligence Agency*, Civil Action No. 22-cv-11532-DJC, 2023 WL 3394485, at *1 (D. Mass. May 11, 2023) (internal quotation omitted). An agency discharges its burden when it "proves that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the FOIA's inspection requirements." *Gillin v. I.R.S.*, 980 F.2d 819, 821 (1st Cir. 1992). "Summary judgment in FOIA cases may be granted solely on the basis of agency affidavits." *Moradi v. Morgan*, 527 F. Supp. 3d 144, 150 (D. Mass. 2021) (citing *Gardels v. Central Intelligence Agency*, 689 F.2d 1100-1104-5 (D.C. Cir. 1982)); *Hemenway v. Hughes*, 601 F. Supp. 1002, 1004 (D.D.C. 1985).

III.     UNDISPUTED MATERIAL FACTS.

On April 5, 2023, Plaintiff sent a FOIA request to CBP.  DN 6-1.  The request sought disclosure of the following information regarding U.S. Border Patrol apprehensions:

> 1.      Records sufficient to identify how many of the apprehensions from October 1, 2022 to December 31, 2022 occurred in New Hampshire – including in the New Hampshire counties of the Swanton sector (Coos, Grafton, and Carroll Counties) – relative to the total number of apprehensions by the sector during that three-month time period;
>
> 2.      Of these October 1, 2022 to December 31, 2022 apprehensions in New Hampshire identified in Request No. 1, records sufficient to identify (i) the municipality where the apprehension occurred, and (ii) the nationality of the person apprehended;
>
> 3.      Records sufficient to identify how many of the 367 January 2023 apprehensions occurred in New Hampshire, including in the New Hampshire counties of the Swanton sector (Coos, Grafton, and Carroll Counties) and
>
> 4.      Of these January 2023 apprehensions in New Hampshire identified in Request No. 3, records sufficient to identify (i) the municipality where the apprehension occurred, and (ii) the nationality of the person apprehended.

DN 6-1 at 2.  On April 18, 2023, CBP's FOIA Division denied Plaintiff's request for records, withholding the documents in full.  DN 6-2; Declaration of Melissa Pansiri ("Pansiri Dec."), attached as Exhibit A, ¶ 8.  That same day, Plaintiff filed an appeal challenging CBP FOIA Division's determination to withhold the responsive records in full.  Pansiri Dec., ¶ 8.  On June 2, 2023, CBP responded to Plaintiff's appeal, affirming FOIA Division's withholdings, determining that FOIA Exemption (B)(7)(F) also applied in withholding the responsive records, and providing a complete explanation of the applicable FOIA Exemptions – (b)(6), (b)(7)(C), (b)(7)(E) and (b)(7)(F).  DN 6-2; Pansiri Dec., ¶ 10.

IV. <u>CBP PROPERLY WITHHELD RESPONSIVE RECORDS</u>.

Pursuant to the FOIA, government agencies must disclose government records to any person who requests those records, unless the records fall within one of the nine listed exemptions to disclosure. 5 U.S.C. §§ 552(a)(3) and 552(b). The intent of the FOIA is to "open agency action to the light of public scrutiny." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989). Thus, "the government bears the burden of demonstrating the applicability of a claimed exemption" when it withholds documents under the FOIA. *Church of Scientology Int'l v. U.S. Dep't of Justice*, 30 F.3d 224, 228 (1st Cir. 1994).

Although Plaintiff alleges that CBP has improperly withheld requested documents, *see* DN 6, such is not the case. In this case, CBP has determined that, pursuant to 5 U.S.C. §§ 552(b)(6), 552 (b)(7)(C), 552(b)(7)(E), and 552(b)(7)(F), it is not required to disclose the information sought by Plaintiff. *See* Pansiri Dec., ¶¶ 11-25. First, CBP properly withheld the documents because they include "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" to include all government records that can be identified as applying to that individual. 5 U.S.C. § 552(b)(6). Second, the withheld documents were exempt from disclosure because they were compiled for law enforcement purposes and the production of the documents "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Third, CBP withheld documents compiled for law enforcement purposes that would reveal unknown "techniques and procedures" or "guidelines" for "law enforcement investigations or prosecutions." Such information is exempt from disclosure. 5 U.S.C. § 552(b)(7)(E). Finally, CBP withheld the documents because the material includes law enforcement information that "could reasonably be expected to endanger the life or physical safety of any individual,"

exempting the documents from disclosure.  5 U.S.C. § 552(b)(7)(F).  Thus, after a de novo review, *see Church of Scientology*, 30 F.3d at 228, this Court should hold that CBP properly withheld the responsive documents and enter summary judgment for CBP.

    A.    Individuals Named in the Records Sought by Plaintiff Enjoy a Right to Privacy That is Not Outweighed by any Public Interest in Disclosure.

CBP has properly withheld information contained in the documents requested by Plaintiff pursuant to Exemption 6 of the FOIA.  5 U.S.C. § 552(b)(6).  Exemption 6 provides that "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" are exempt from disclosure under the FOIA.  *Id.*  Although the withheld documents may not have originated in a personnel or medical file, the specific location of the document is not the determining factor in the analysis as to whether disclosure is required.  The personal privacy exemptions to the FOIA cover "the individual's control of information concerning his or her person."  *Reporters Comm. For Freedom of the Press*, 489 U.S. at 763.  As the United States Supreme Court has held, "[t]he protection of an individual's right of privacy which Congress sought to achieve by preventing the disclosure of [information] which might harm the individual surely was not intended to turn upon the label of the file which contains the damaging information."  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 601 (1982) (internal citations omitted).  "[I]nformation about an individual should not lose the protection of Exemption 6 merely because it is stored by an agency in records other than 'personnel' or 'medical' files."  *Id.*  As a result, "[w]hen disclosure of information which applies to a particular individual is sought from Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy."  *Id.* at 602.

In this case, CBP is withholding personal information from the responsive records such as names, addresses, dates of birth, places of birth, personal identification numbers (such as alien registration numbers and fingerprint identification numbers), employment history, medical history, and other personal data. Pansiri Dec., ¶ 22. CBP applied Exemption (b)(6) in withholding this information. *Id.* The privacy interest that is at stake is the interest of CBP employees in protecting their identities from disclosure. *Id.*, ¶ 23. Having identified a valid privacy interest protecting disclosure of the information, the analysis then turns to whether Plaintiff has asserted a public interest sufficient to overcome the privacy interest of these CBP employees. "The *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (emphasis added). Knowledge of the employees' names and other personally identifiable information would not matter here.

CBP also properly applied Exemption (b)(6) in withholding identifying details of third parties, including the subjects of the apprehension records requested by Plaintiff. Both Exemption (b)(6) and Exemption (B)(7)(C) have been found to protect the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses, and informants. *Lewis v. Dep't of Justice*, 609 F. Supp. 2d 80, 84 (D.D.C. 2009); *see also Roth v. Dep't of Justice*, 642 F.3d 1161, 1174 (D.C. Cir. 2011) ("we have 'long recognized,' the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation. [N]ot only the targets of law-enforcement investigations, but also 'witnesses, informants, and … investigating agents' have a 'substantial interest' in ensuring that their relationship to the investigations 'remains secret.'") (internal citations omitted).

Here, disclosure of the information withheld by CBP under Exemption (b)(6) would not "shed [ ] light on the agency's performance of its statutory duties" or otherwise let citizens know "what their government is up to." *Reporters Comm. For Freedom of the Press*, 489 U.S. at 773. The privacy interests of the CBP employees and third parties mentioned in the apprehension records outweigh any possible public interest in disclosure of their identities and any identifying information. Indeed, Plaintiff concedes that it is not seeking the release of this personal identifying information. DN 6, ¶ 33. Accordingly, this Court should hold that CBP properly applied Exemption (b)(6) in withholding personal information from the requested records.

CBP also relied on Exemption (b)(7)(C) in withholding information from the responsive records. Pansiri Dec., ¶¶ 18, 25. Exemption 7(C) protects disclosure of records or information compiled for law enforcement purposes, but only if their production could reasonably be expected to constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). "As a result of Exemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information." *Blackwell v. Fed. Bureau of Investigation*, 646 F.3d 37, 41 (D.C. Cir. 2011). All records responsive to Plaintiff's request were compiled for law enforcement purposes, because the information contained within the records is created and used by CBP in its mission to secure the borders of the United States. Pansiri Dec., ¶ 25. Government employees, and specifically law enforcement personnel, have a significant privacy interest in their identities, as the release of their identities or other personal information may subject them to embarrassment and harassment. *See New England Apple Council v. Donovan* 725 F.2d 139 (1st Cir. 1984). "[P]rivacy interests are particularly difficult to overcome when law enforcement information regarding third parties is implicated." *Martin v. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007). Again, Plaintiff does not appear to be

seeking release of this personally identifiable information. DN 6, ¶ 33. Even if they were, however, the holders of the redacted personally identifiable information have a protectable privacy interest in their identities that would be compromised by the release of the information. Pansiri Dec., ¶ 25. Additionally, release of this information would not shed light on the actions of CBP, and there is no public interest in the disclosure of this information. *Id.* The Court should therefore hold that CBP properly applied Exemption (b)(7)(C) in withholding personal information from the responsive law enforcement records and enter summary judgment in favor of CBP.

      B.      Disclosure of the Withheld Law Enforcement Records Would Reveal Techniques and Procedures or Guidelines that Could Reasonably be Expected to Endanger the Life or Physical Safety of any Individual.

Exemption (b)(7) protects six distinct types of information if found in records "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). When an agency has a clear law enforcement mandate, the exemption applies wherever there is a "rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998). An agency's assertion that records were compiled for a law enforcement purpose is entitled to deference. *Id.* CBP is a law enforcement agency with enforcement responsibilities of more than 400 federal statutes on behalf of more than 40 different federal agencies. Pansiri Dec., ¶ 21. The records, procedures, guidelines, and techniques at issue in this case are directly related to CBP's law enforcement activities and are all used for border security and law enforcement purposes. *Id.*

Here, CBP relied on FOIA Exemptions (b)(7)(E) and (b)(7)(F) in withholding the responsive records in full. Pansiri Dec., ¶¶ 11, 12. Exemption (b)(7)(E) protects records from

disclosure when disclosure would "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  Exemption (b)(7)(F) protects such records from disclosure when disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F).

Although Exemption (b)(7)(E) is limited to cases in which disclosure "could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E), the Exemption "sets a relatively low bar for the agency to justify withholding." *Blackwell*, 646 F.3d at 42.  "To clear that relatively low bar, an agency must demonstrate only that release of a document might increase the risk 'that a law will be violated or that past violators will escape legal consequences.'" *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int's Boundary and Water Cmm'n, U.S.-Mexico*, 740 F.3d 195, 25 (D.C. Cir. 2014) (quoting *Mayer Brown LLP v. I.R.S.*, 562 F.3d 1190. 1193 (D.C. Cir. 2009)).  Once it is determined that information falls within Exemption (b)(7)(E)'s purview, it is not subject to a balancing test as with other exemptions but is instead "categorically exempt" from disclosure.  *Fisher v. Dep't of Justice*, 772 F.Supp. 7, 12 n.9 (D.D.C.1991).

Allowing Plaintiff to access the information it seeks could allow someone to construct a mosaic of CBP law enforcement techniques, procedures, and guidelines practiced in the state of New Hampshire.  Pansiri Dec., ¶ 16.  Under this mosaic theory, if Exemption (b)(7)(E) protects the full mosaic from disclosure, it also "shield[s] each individual piece" of the mosaic "to prevent anyone from constructing" it.  *Reporters Comm. For Freedom of the Press v. Fed. Bureau of Investigation*, 548 F. Supp. 3d 185, 199 (D.D.C. 2021).  The theory "finds support in

both Supreme Court and D.C. Circuit precedent recognizing that 'bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself.'" *Shapiro v. Dep't of Justice*, 239 F. Supp. 3d 100, 115 (D.D.C. 2017) (quoting *Cent. Intelligence Agency v. Sims*, 471 U.S. 159, 178 (1985)).

Beecher Falls station is the sole station responsible for patrolling the state of New Hampshire. Pansiri Dec., ¶ 16. Providing Plaintiff access to the requested records would endanger CBP personnel and other individuals, including innocent bystanders, within the Beecher Falls station and its area of responsibility, which encompasses the entire state of New Hampshire, as well as parts of Vermont. *Id.* Because of this significant concern, CBP does not release station-level statistics regarding apprehensions. *Id.* Releasing such information would effectively create a map for violators of the law to conduct their illegal activity thereby leaving our nation's borders more vulnerable. *Id.* Additionally, if armed with such information, non-citizens without legal status to enter or remain in the United States might avoid certain areas along the border or target other areas along the border to circumvent adherence to immigration law requirements. *Id.*; *see Shapiro*, 239 F. Supp. 3d at 120 (finding that "knowing that the FBI has historically focused its enforcement efforts in a particular region … might aid a criminal in circumventing the law").

In this case, it is critical that CBP protect the date, time, location, and number of apprehensions broken down by municipality and nationality to ensure that potential law violators do not have access to or use this information to determine which stations and which areas of responsibility in New Hampshire are most vulnerable to exploitation. Pansiri Dec., ¶ 17. Disclosure of this information could result in harm to the life or physical safety of Border Patrol agents, CBP employees, and other individuals located within the Beecher Falls station and its

10

area of responsibility. *Id*. Releasing statistics that would create such a vulnerability runs afoul of CBP's critical security mission of safeguarding the country's borders. *Id*. Therefore, the Court should hold that CBP properly withheld the responsive records in their entirety pursuant to FOIA Exemptions (b)(7)(E) and (b)(7)(F). The Court should therefore enter summary judgment in favor of CBP.

V.   CONCLUSION.

The material facts of this case are not in dispute. As set forth above, those facts establish that CBP is entitled to judgment as a matter of law. The Court should therefore enter summary judgment for CBP.

Respectfully submitted.

JANE E. YOUNG
United States Attorney

By: /s/ Michael McCormack
Michael McCormack
Assistant U.S. Attorney, NH Bar No. 16470
United States Attorney's Office
53 Pleasant Street
Concord, NH  03301
(603) 225-1552
Michael.McCormack2@usdoj.gov

Dated:  July 14, 2023